IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRAWFLOWER ELECTRONICS, INC., | No. C-05-0747 MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS; VACATING HEARING** |
| v. | |
| RADIOSHACK CORPORATION, | (Docket No. 12) |
| Defendant. | |
| _____ / | |

Before the Court is defendant RadioShack Corporation's ("RadioShack") motion, filed April 28, 2005, to dismiss the second through seventh causes of action asserted against it in the First Amended Complaint filed by plaintiff Strawflower Electronics, Inc. ("Strawflower"). Strawflower has filed opposition to the motion, to which RadioShack has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the motion appropriate for resolution without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the June 3, 2005 hearing. For the reasons set forth below, RadioShack's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

Strawflower alleges that, in 1979, it entered into a contract with RadioShack, by which RadioShack authorized Strawflower to sell RadioShack products and to use the

RadioShack name in the operation of a retail store in Half Moon Bay, California ("Contract"). (See First Amended Complaint ("FAC") ¶ 6.) According to Strawflower, it opened the Half Moon Bay store in December 1979 and used the RadioShack name and sold RadioShack products for approximately 25 years. (See id. ¶ 8.) Strawflower alleges that, pursuant to the Contract terms, RadioShack was permitted to terminate the Contract only if "(1) [Strawflower] fail[ed] to purchase from [RadioShack] a minimum of $10,000 worth of merchandise, at [Strawflower]'s cost . . . in any one year . . . OR (2) [Strawflower] fail[ed] to reasonably serve [its] market area with products reasonably expected to be carried by RADIO SHACK Authorized Sales Centers in locations of similar market size." (See id. ¶ 9.)

According to Strawflower, RadioShack, prior to and during 2004, sought to terminate the Contract by invoking both grounds for termination set forth in the Contract; Strawflower opposed termination, contending that it purchased in excess of $10,000 worth of merchandise every year, and that it had "reasonably served" its market area. (See id. ¶ 10.) Strawflower alleges that when Strawflower requested RadioShack explain the factual basis for its claim there was cause to terminate the Contract, RadioShack refused to respond, provided inconsistent grounds for termination of the Contract, or provided grounds for termination that are not set forth in the Contract; thereafter, on or about January 17, 2005, RadioShack sent Strawflower a letter stating that RadioShack was terminating the Contract "for cause," effective February 17, 2005. (See id. ¶ 11.)

Strawflower alleges that RadioShack "has undertaken a corporate policy of taking over independently operated stores, like Strawflower's store in Half Moon Bay, by threatening, intimidating, and ultimately terminating independent store owners." (See id. ¶ 19.) Strawflower further alleges that RadioShack sought "to coerce and intimidate Strawflower into an illegal tying arrangement by forcing Strawflower to purchase certain RadioShack products irrespective of whether RadioShack's scheme was illegal, harmful to competition, unprofitable for Strawflower, and harmful to consumers." (See id. ¶ 20.) According to Strawflower, "RadioShack has interpreted the Contract as requiring

2

Strawflower to purchase 95% of a certain set of RadioShack products (called RadioShack Select products) and to keep such RadioShack products in inventory (the '95% Rule')." (See id. ¶ 31.) Strawflower alleges that "it was mandatory for Strawflower to meet the 95% requirement even if to do so Strawflower would have to buy RadioShack products that it could not sell because of the lack of demand in its market area" and even if it would have been more profitable for Strawflower to buy and sell competing non-RadioShack products. (See id.) Strawflower further alleges that in and before 2004, RadioShack contended Strawflower's failure to comply with the 95% Rule constituted a breach of the Contract. (See id.) Lastly, Strawflower alleges, the 95% Rule is harmful to competition. (See id. ¶ 33.)

Strawflower asserts eight causes of action against RadioShack: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) "common law unfair competition and misappropriation of business"; (4) violation of § 3 of the Clayton Act (15 U.S.C. § 14) and § 1 of the Sherman Act (15 U.S.C. § 1); (5) violation of the Cartwright Act (California Business and Professions Code § 16727 et seq.); (6) fraud, based on a theory of negligent misrepresentation; (7) violation of California Business and Professions Code § 17200; and (8) violation of the California Franchise Relations Act (California Business and Professions Act § 20000 et seq.) and California Franchise Investment Law (California Corporations Code § 31000 et seq.).

In the instant motion to dismiss, RadioShack moves to dismiss the second through seventh causes of action, pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. RadioShack does not move to dismiss the first cause of action, for breach of contract, or the eighth cause of action, for violation of the California Franchise Relations Act and California Franchise Investment Law.

**LEGAL STANDARD**

**A. Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

**B. Rule 9(b)**

Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff must plead evidentiary facts of the time and place of

the fraud, the persons involved, the statements made, and an explanation of why or how such statements are false or misleading. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 and n.7 (9th Cir. 1994) (en banc). Conclusory allegations of fraud are insufficient. See id. at 1548 (citing Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989)).

**DISCUSSION**

**A. Antitrust Claims**

Strawflower alleges that RadioShack's implementation and enforcement of the 95% Rule, which required Strawflower "to purchase 95% of a certain set of RadioShack products . . . and to keep such RadioShack products in inventory," (see FAC ¶ 31), was "harmful to competition" because it "required the purchase of products from RadioShack that Strawflower believed it could obtain at more competitive prices from other sellers," (see id. ¶ 33). Strawflower contends that RadioShack's enforcement of the 95% Rule violated § 3 of the Clayton Act, § 1 of the Sherman Act, and the Cartwright Act. (See FAC ¶¶ 35, 41.) Although not clearly alleged in the complaint, Strawflower, in its opposition, states that its antitrust claims are based on "an illegal tying arrangement in which RadioShack's sale of RadioShack branded products is tied to Strawflower's continued use of the RadioShack name." (See Opp. at 11.)[1]

"A tying arrangement is an agreement by a party to sell one product but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 461 (1992) (internal quotation and citation omitted).

---

[1] The Supreme Court has held that, with respect to the definition of tying, the Sherman Act and the Clayton Act use the same standard. See Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, 23 n.39 (1984). Federal decisions interpreting the Sherman Act and Clayton Act with respect to tying also are applicable to tying claims brought under the California Cartwright Act, as the sections of the Cartwright Act addressing tying were modeled after the Sherman and Clayton Acts. See Hamro v. Shell Oil Co., 674 F.2d 784, 786 (9th Cir. 1982). Accordingly, and because the parties treat the antitrust claims interchangeably, the Court will analyze all three antitrust claims asserted by Strawflower together.

5

The Supreme Court has held that "[s]uch an arrangement violates § 1 of the Sherman Act if the seller has appreciable economic power in the tying market and if the arrangement affects a substantial volume of commerce in the tied market." See id. "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." Id. at 464 n.9 (internal quotation and citation omitted). "When such 'forcing' is present, competition on the merits in the market for the tied item is restrained and the Sherman Act is violated." Id.

Strawflower argues, relying on the Supreme Court's decision in Eastman Kodak and two district court cases from outside the Ninth Circuit,[2] that RadioShack unlawfully tied the use of its trademark to Strawflower's sale of RadioShack products; in other words, that RadioShack permitted Strawflower to use the RadioShack name only if Strawflower sold certain RadioShack products. The Ninth Circuit has held, however, that, under such circumstances, a trademark may not be considered a separate product for purposes of a tying claim. In Krehl v. Baskin-Robbins Ice Cream Co., 664 F.2d 1348 (9th Cir. 1982), the Ninth Circuit rejected the plaintiff's argument that Baskin-Robbins' policy of conditioning the grant of a franchise upon the purchase of ice cream exclusively from Baskin-Robbins constituted an unlawful tying of the Baskin-Robbins trademark to the ice cream products they were compelled to purchase, in violation of the Sherman Act. See id. at 1352-54. The Ninth Circuit held that in "a distribution type" franchise, such as that employed by Baskin-Robbins, "the franchised outlets serve merely as conduits through which the trademarked goods of the franchisor flow to the ultimate consumer" and the trademark in a distribution franchise "serves merely as a representation of the end product marketed by the system." See id. at 1353-54. As the Ninth Circuit observed, "[b]ecause the prohibition of tying arrangements is designed to strike solely at the use of a dominant desired product to

---

[2] See Subsolutions, Inc. v. Doctor's Associates, Inc., 62 F. Supp. 2d 616 (D. Conn. 1999); Little Caesar Enterprises, Inc. v. Smith, 34 F. Supp. 2d 459 (E.D. Mich. 1998).

6

compel the purchase of a second undesired commodity," there can be no claim for unlawful tying "where the trademark serves only to identify the allegedly tied product." See id. at 1354; see also Hamro v. Shell Oil Co., 674 F.2d at 786-87 (rejecting plaintiff's claim that Shell engaged in unlawful tying in violation of Cartwright Act by authorizing plaintiff to use Shell's trademark at his service station only if he purchased Shell gasoline; holding "as a matter of law the Shell trademark and Shell gasoline are not separate and distinct products").[3]  Here, the requirement that Strawflower purchase RadioShack products in order to use the RadioShack trademark falls squarely within the holdings of Krehl and Hamro.

      To the extent the district court opinions in Subsolutions and Little Caesar, upon which Strawflower relies, arguably conflict with the Ninth Circuit's opinions in Krehl and Hamro, the Ninth Circuit decisions control.  Further, Strawflower's reliance on Eastman Kodak is misplaced, as that case addresses the allegedly unlawful tying of "the sale of service for Kodak machines to the sale of parts," see Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. at 459, and does not address the circumstances under which a trademark can be considered a separate product for purposes of a claim for unlawful tying.

      Accordingly, the Court will GRANT RadioShack's motion to dismiss the antitrust

---

[3] On the other hand, a tying claim may be stated based on tying the use of a trademark to the purchase of certain "commonplace goods" used in a "business format" franchise.  See Krehl, 664 F.2d at 1353.  Unlike a "distribution type" franchise, a "business format" franchise "is usually created merely to conduct business under a common trade name" and the "franchise outlet itself is generally responsible for the production and preparation of the system's end product."  See Krehl, 664 F.2d at 1353.  In a "business format" franchise, a trademark "may be sufficiently unrelated to the alleged tied product to warrant treatment as a separate item."  See id. at 1352 (citing Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971)).  In Krehl, the Ninth Circuit noted that, in Chicken Delight, it had found the trademark and the allegedly tied products to be separate where the franchisor "conditioned the grant of a franchise on the purchase of a catalogue of miscellaneous items used in the franchised business," which were "neither manufactured by the franchisor nor were they of a special design uniquely suited to the franchised business."  See id.

claims, with prejudice.[4]

**B. Fraud**

Strawflower's fraud claim against RadioShack is based on the following statements, each of which Strawflower contends RadioShack knew was false when made:

> that RadioShack is entitled to terminate the Contract based upon what RadioShack unilaterally determines to be "cause"; that Strawflower has failed to reasonably serve its market area with products reasonably expected to be carried by a RadioShack dealer in markets of similar size; that Strawflower must comply with whatever demands are made by RadioShack in connection with the Contract or face termination by RadioShack; that RadioShack is entitled to terminate the Contract based upon 30-days notice to Strawflower; that RadioShack can unilaterally decide whether Strawflower is complying with the terms of the Contract, irrespective of the terms set forth in the Contract; that RadioShack has the legal right to unilaterally change the requirements for Strawflower's compliance with the Contract at RadioShack's sole discretion; that RadioShack is entitled to unilaterally change clear and unequivocal terms of the Contract; that Strawflower has "ripped off" RadioShack; that Strawflower's performance is below that of similarly situated stores; that Strawflower's RadioShack store is not in compliance with RadioShack standards; that RadioShack wants to be a partner with Strawflower; that Strawflower is not providing good customer service in the Half Moon Bay market area; and that Strawflower has not adequately represented the RadioShack line of products.

(See FAC ¶ 43.)  The elements of fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  See Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996).

As RadioShack correctly argues, the above-quoted allegations fail entirely to comply with the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which, as noted, requires "the circumstances constituting fraud" to be pleaded with particularity. See Fed. R. Civ. P. 9(b).  Strawflower's failure to plead the alleged fraud with the particularity required by Rule 9(b) requires dismissal of its fraud claim.

RadioShack further argues that the Court should not afford Strawflower leave to amend its fraud allegations because Strawflower's fraud claim is barred as a matter of law, on two separate grounds.  First, RadioShack argues, a fraud claim cannot be based on

---

[4] In light of this ruling, the Court does not reach RadioShack's alternative grounds for dismissal of the antitrust claims.

8

statements of opinion, but only on statements of fact. As RadioShack points out, each of the alleged misstatements relate to RadioShack's interpretation of the requirements of the Contract. The California Supreme Court has held that a plaintiff alleging fraud "may not justifiably rely upon mere statements of opinion, including legal conclusions drawn from a true state of facts, unless the person expressing the opinion purports to have expert knowledge concerning the matter or implies the existence of facts or occupies a position of confidence and trust." See Seeger v. Odell, 18 Cal. 2d 409, 414 (1941); see also Harazim v. Lynam, 267 Cal. App. 2d 127, 131 (1968) (noting that fraud claim must be based on misrepresentations of fact; "misrepresentations of law or legal opinions expressed by laymen are insufficient"). The Court agrees with RadioShack that the allegedly fraudulent statements are non-actionable statements of opinion about the requirements of the Contract, as to which no claim for fraud may be based. The Contract speaks for itself. Accordingly, the Court will GRANT RadioShack's motion to dismiss the fraud claim, with prejudice.

      Second, as RadioShack argues, Strawflower's allegation that RadioShack made fraudulent misrepresentations "as a smoke screen to cover up the illegal termination of Strawflower's RadioShack business," (see FAC ¶ 43), cannot provide the basis for a fraud claim. In its opposition, Strawflower acknowledges that all of the alleged misrepresentations "were part of RadioShack's plan to create grounds for terminating Strawflower." (See Opp. at 8.) As a general rule, a fraud claim may not be based on statements made in the course of terminating a contract. See Hunter v. Up-Right, Inc., 6 Cal. 4th 1174, 1178 (1994) (holding "wrongful termination of employment [contract] ordinarily does not give rise to a cause of action for fraud or deceit, even if some misrepresentation is made in the course of the employee's dismissal"; "[t]ort recovery is available only if the plaintiff can establish all of the elements of fraud with respect to a misrepresentation that is separate from the termination of the employment contract, i.e. when the plaintiff's fraud damages cannot be said to result from termination itself"); cf. Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990-91, 993 (2004)

(upholding fraud claim based on defendant's false statements about quality of goods it sold pursuant to contract, which exposed plaintiff to liability for personal damages independent of "economic loss"; finding defendant's tortious conduct was separate from breach of contract, which involved defendants' delivery of nonconforming goods).  Accordingly, the Court will GRANT RadioShack's motion to dismiss the fraud claim, with prejudice, on this alternate ground, as well.

### C.  Common Law Unfair Competition and Misappropriation

Strawflower alleges a claim for "common law unfair competition and misappropriation of business," based on RadioShack's alleged "misappropriat[ion of] Strawflower's business by unilaterally and maliciously terminating Strawflower's rights, including its right to use the RadioShack name and sell RadioShack products" without Strawflower's permission.  (See FAC ¶ 26.)  RadioShack moves to dismiss said cause of action for failure to state a claim.

The California Supreme Court has held that "[t]he common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's good as those of another."  See Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1263 (1992).  "According to some authorities, the tort also includes acts analogous to 'passing off,' such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market."  Id.  Strawflower makes no such allegation in support of its unfair competition claim.  Rather, Strawflower, in its opposition, relies on a case addressing the common law tort of misappropriation, Balboa Insurance Co. v. Trans Global Equities, 218 Cal. App. 3d 1327 (1990).[5]  The elements of common law misappropriation are: "(1) the plaintiff has invested substantial time and money in development of its . . . 'property'; (2) the defendant has appropriated the [property] at little or no cost; and (3) the plaintiff has been injured by the defendant's conduct."  See id. at

---

[5] The Ninth Circuit has noted that "common law misappropriation is one of a number of doctrines subsumed under the umbrella of unfair competition."  See City Solutions, Inc. v. Clear Channel Communications, Inc., 365 F.3d 835, 842 (9th Cir. 2004).

1342 (citation omitted) (ellipses and brackets in original). The doctrine "is normally invoked in an effort to protect something of value that is not covered either by patent or copyright law on the one hand, or by traditional doctrines of unfair competition, such as trade secret theft or breach of confidential relationship, on the other." See id. "Property," for purposes of a claim for common law misappropriation, is not limited to physical or tangible property, but may include "a confidential and proprietary business strategy." See City Solutions, 365 F.3d at 842.

Here, Strawflower has not alleged that RadioShack has misappropriated any of Strawflower's property. It alleges only that RadioShack is liable for misappropriation by "unilaterally and maliciously terminating Strawflower's rights, including its rights to use the RadioShack name and sell RadioShack products . . . in order to misappropriate the RadioShack business in the Half Moon Bay area[.]." (See FAC ¶¶ 26-27.) The RadioShack name is unquestionably RadioShack's property, however, and Strawflower's right to use it existed only because of the parties' Contract. (See Jansen Decl. Ex. A (Contract) ¶ I(B) (providing RadioShack Division has "exclusive right to and ownership of" RadioShack mark and that "all goodwill incident to the use" of the mark inures to "the sole benefit" of RadioShack)). The Court has located no case, and the parties have identified none, in which a party has been held liable for common law misappropriation for terminating a contractual arrangement by which it granted another the right to use that party's brand name. To the extent RadioShack may have breached the Contract, the Court finds Strawflower is limited to remedies for breach of contract. See, e.g., Freeman & Mills, Inc. v. Belcher Oil Co., 11 Cal. 4th 85 at 102 (holding "general rule preclud[es] tort recovery for noninsurance contract breach").

Accordingly, the Court will GRANT RadioShack's motion to dismiss, with prejudice, Strawflower's claim for common law unfair competition and misappropriation of business.

**D.  Statutory Unfair Competition – Cal. Bus. & Prof. Code § 17200**

RadioShack moves to dismiss Strawflower's claim for violation of § 17200 for failure to state a claim. Section 17200 of the California Business and Professions Code defines

"unfair competition" to include "any unlawful, unfair or fraudulent business act or practice." See Cal. Bus. & Prof. Code § 17200. With respect to the prohibition against "unlawful" business practices, the scope of § 17200 is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." See Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 180 (1999). Strawflower alleges, in part, that RadioShack violated § 17200 by failing to comply with the requirements of the California Franchise Relations Act ("FRA") and California Franchise Investment Law ("FIL"). (See FAC ¶ 52.) As noted, RadioShack has not moved to dismiss Strawflower's separate claim for violation of the FRA and FIL, nor does RadioShack argue that a § 17200 claim may not be based on a violation of the FRA or FIL. Indeed, RadioShack does not even mention those statutes in its motion to dismiss the § 17200 claim.

In its reply, RadioShack argues that Strawflower's allegation that RadioShack violated § 17200 by violating the FRA and FIL should be disregarded because it does not appear in Strawflower's Seventh Claim for Relief, alleging a cause of action for violation of § 17200, but instead appears only in Strawflower's Eighth Claim for Relief, alleging a cause of action for violation of the FRA and FIL. (See FAC ¶ 52.) Although it would have been preferable for Strawflower to have included this claim expressly in its Seventh Claim for Relief, the Court, as noted, must construe the allegations of the complaint in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d at 898. Accordingly, RadioShack's motion to dismiss the § 17200 claim will be DENIED.[6]

**D. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Strawflower alleges that RadioShack breached the implied covenant by "unfairly and

---

[6] In light of this ruling, the Court does not reach RadioShack's arguments that the § 17200 claim cannot be based on any of Strawflower's other causes of action. The Court also declines to reach the argument, raised for the first time in RadioShack's reply, that the § 17200 claim should be dismissed because Strawflower fails to seek any remedy available under that statute, as Strawflower has not had an opportunity to file a response to that argument. See, e.g., Lentini v. California Center for the Arts, Escondido, 370 F.3d 837, 843 n. 6 (9th Cir. 2004) (refusing to consider argument raised for the first time in reply because opposing party had no opportunity to respond).

maliciously taking actions to frustrate and misappropriate the benefits that Strawflower is entitled to under the Contract," "fabricating grounds for termination" of the Contract, terminating the Contract "maliciously and with deceit," "seeking to coerce and intimate Strawflower into an illegal tying arrangement," and "making fraudulent statements and representations" about RadioShack's entitlement to terminate the Contract and Strawflower's performance of the terms of the Contract.  (See FAC ¶¶ 17-21, 43.) Strawflower seeks an award of compensatory and punitive damages against RadioShack for breach of the implied covenant of good faith and fair dealing.  (See FAC, Prayer for Relief ¶ B.)  RadioShack moves to dismiss the implied covenant claim on the ground that no claim for tortious breach of the implied covenant is stated under the facts alleged.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."  Foley v. Interactive Data Corp., 47 Cal. 3d 654, 683 (1988) (citation omitted).  "Because the covenant is a contract term, however, compensation for its breach has almost always been limited to contract rather than tort remedies."  Id.; see also id. at 700 (holding "tort remedies are not available for breach of the implied covenant in an employment contract to employees who allege they have been discharged in violation of the covenant").  As the California Supreme Court has noted, there is a general rule limiting such claims "to contract rather than tort remedies"; "[a]t present, [the Supreme Court] recognizes only one exception to that general rule: tort remedies are available for a breach of the covenant in cases involving insurance polices."  See Cates Construction, Inc. v. Talbot Partners, 21 Cal. 4th 28, 43 (1999) (holding tort damages not recoverable in suit for breach of implied covenant in construction performance bond). Consequently, Strawflower cannot state a claim for tortious breach of the implied covenant of good faith and fair dealing.

Moreover, punitive damages "are available only in actions 'for breach of an obligation not arising from contract.'"  See Cates Construction, 21 Cal. 4th at 61 (quoting Cal. Civ. Code § 3294).  "In the absence of an independent tort, punitive damages may not be awarded for breach of contract even where the defendant's conduct in breaching the

13

contract was wilful, fraudulent, or malicious." Id. (citation omitted).

To the extent Strawflower seeks only contract damages for breach of the implied covenant of good faith and fair dealing, the claim is duplicative of its claim for breach of contract. See Guz v. Bechtel National, Inc., 24 Cal. 4th 317, 377 (2000) (holding claim that realleges breach of contract as violation of implied covenant of good faith and fair dealing "is superfluous"); see also Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371 (1990) (holding where claim for breach of implied covenant of good faith and fair dealing was "nothing more than a duplicative claim for contract damages, the trial court was correct in sustaining a demurrer to this count without leave to amend").

Accordingly, the Court will GRANT RadioShack's motion to dismiss, with prejudice, Strawflower's claim for breach of the implied covenant of good faith and fair dealing.

**CONCLUSION**

For the reasons set forth above, RadioShack's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. RadioShack's motion to dismiss Strawflower's antitrust claims for violation of § 1 of the Sherman Act, § 3 of the Clayton Act, and the California Cartwright Act is GRANTED, and all such claims are DISMISSED with prejudice.

2. RadioShack's motion to dismiss Strawflower's fraud claim is GRANTED, and said claim is DISMISSED with prejudice.

3. RadioShack's motion to dismiss Strawflower's claim for "common law unfair competition and misappropriation of business" is GRANTED, and said claim is DISMISSED with prejudice.

4. RadioShack's motion to dismiss Strawflower's claim for violation of California Business and Professions Code § 17200 is DENIED.

5. RadioShack's motion to dismiss Strawflower's claim for breach of the implied covenant of good faith and fair dealing is GRANTED, and said claim is DISMISSED with prejudice.

6. RadioShack shall answer the remainder of the amended complaint within twenty

days of the date of this order.

     This order terminates Docket No. 12.

**IT IS SO ORDERED.**

Dated: June 3, 2005
                          /s/ Maxine M. Chesney
                          MAXINE M. CHESNEY
                          United States District Judge