IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STRAWFLOWER ELECTRONICS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> RADIOSHACK CORPORATION, <br><br>  Defendant. <br> _____ / | No. C-05-0747 MMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS; VACATING HEARING** <br><br> (Docket No. 40) |

Before the Court is defendant RadioShack Corporation's ("RadioShack") motion, filed August 18, 2005, to dismiss the second through sixth causes of action asserted against it in plaintiff Strawflower Electronics, Inc.'s ("Strawflower") Second Amended Complaint. Strawflower has filed opposition to the motion, to which RadioShack has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the motion appropriate for resolution without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the September 23, 2005 hearing on the matter. For the reasons set forth below, RadioShack's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

Strawflower alleges that, in December 1979, it entered into a contract with

RadioShack ("Contract"), by which RadioShack authorized Strawflower to sell RadioShack products and to use the RadioShack name in the operation of a retail store in Half Moon Bay, California. (See Second Amended Complaint ("SAC") ¶ 6.) According to Strawflower, it opened the Half Moon Bay store in December 1979, and used the RadioShack name and sold RadioShack products for approximately 25 years. (See id. ¶ 8.) Strawflower alleges that, pursuant to the Contract terms, RadioShack was permitted to terminate the Contract only if "(1) [Strawflower] fail[ed] to purchase from [RadioShack] a minimum of $10,000 worth of merchandise, at [Strawflower]'s cost . . . in any one year . . . OR (2) [Strawflower] fail[ed] to reasonably serve [its] market area with products reasonably expected to be carried by RADIO SHACK Authorized Sales Centers in locations of similar market size." (See id. ¶ 9.)

According to Strawflower, RadioShack, prior to and during 2004, sought to terminate the Contract by invoking both grounds for termination set forth in the Contract; Strawflower opposed termination, contending that it purchased in excess of $10,000 worth of merchandise every year, and that it had "reasonably served" its market area. (See id. ¶ 10.) Strawflower alleges that when it asked RadioShack to explain the factual basis for its claim that cause existed to terminate the Contract, RadioShack refused to respond, provided inconsistent grounds for termination of the Contract, or provided grounds for termination that are not set forth in the Contract; thereafter, on or about January 17, 2005, RadioShack sent Strawflower a letter stating that RadioShack was terminating the Contract "for cause," effective February 17, 2005. (See id. ¶ 11.)

Strawflower further alleges that, within the past four years, RadioShack implemented a new policy that required Strawflower to buy non-RadioShack-branded products directly from RadioShack, rather than from independent distributors. (See id. ¶ 40.) According to Strawflower, the policy required Strawflower to buy a certain percentage of both non-RadioShack-branded products and RadioShack-branded products from RadioShack, or face termination of the Contract. (See id.) In implementing this policy, RadioShack, according to Strawflower, conditioned Strawflower's ability to buy and sell RadioShack-

branded products, and Strawflower's right to use the RadioShack name, on Strawflower's buying non-RadioShack-branded products from RadioShack, instead of from independent distributors who sold the same products at lower cost. (See id. ¶ 46.) Strawflower contends this policy is harmful to competition and harmful to consumers because it precluded Strawflower from buying the non-RadioShack-branded products at the lowest price, and forced Strawflower to sell at higher prices to consumers. (See id. ¶ 48.)

Strawflower asserts seven causes of action against RadioShack: (1) breach of contract; (2) a claim for a declaratory judgment that RadioShack breached the Contract and that Strawflower did not breach the Contract; (3) a claim for a declaratory judgment that the Contract created a franchise relationship between Strawflower and RadioShack, pursuant to the California Franchise Relations Act ("CFRA") (California Business and Professions Act § 20000 et seq.) and California Franchise Investment Law ("CFIL") (California Corporations Code § 31000 et seq.); (4) breach of fiduciary duty; (5) illegal tying in violation of § 3 of the Clayton Act (15 U.S.C. § 14) and § 1 of the Sherman Act (15 U.S.C. § 1); (6) illegal tying in violation of the Cartwright Act (California Business and Professions Code § 16727 et seq.); and (7) unfair competition in violation of California Business and Professions Code § 17200.

RadioShack now moves to dismiss the second through sixth causes of action for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. RadioShack does not move to dismiss the first cause of action, for breach of contract, or the seventh cause of action, for unfair competition in violation of § 17200.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

3

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

**DISCUSSION**

**A. Breach of Fiduciary Duty**

RadioShack argues that Strawflower's claim for breach of fiduciary duty is subject to dismissal because that there is no fiduciary relationship between the parties as a matter of law. Strawflower alleges that a fiduciary relationship existed between it and RadioShack because they were "business partners and/or joint venturers," (see SAC ¶ 30), and because "RadioShack insisted, demanded and required that Strawflower provide RadioShack with confidential business information, which RadioShack claimed it would

then use for the joint benefit of Strawflower and RadioShack." (See id. ¶ 31.)

### 1. Business Partners

By statute, a fiduciary relationship exists among partners in a business partnership. See Cal. Corp. Code § 16404. "A partnership is defined by statute . . . as an association of two or more persons to carry on as co-owners a business for profit." See Persson v. Smart Inventions, Inc., 125 Cal. App. 4th 1141, 1157 (2005) (citing Cal. Corp. Code § 16202(a)) (emphasis added).

Defendants argue that the lack of a partnership is clear from the face of the Contract, which states that the RadioShack store at issue is owned and operated solely by Strawflower. As defendants note, the Contract expressly provides: "The management, operation and ownership of the store are acknowledged to be solely under the control of [Strawflower]." (See Fillerup Decl. in Support of Plaintiff's Motion For Leave to File Second Amended Complaint, Ex. A-1 ("Contract") § III.)[1]  The Contract also identifies the store as "owned" by Strawflower, (see id. § I.A), and further provides that Strawflower may not use the RadioShack trademark "unless it is clearly indicated that the store is owned and operated by [Strawflower]." (See id. § I.D). Strawflower also agreed "not to do anything that would imply or indicate" that RadioShack "in any manner, either directly or indirectly owns, controls, [or] operates" Strawflower or its store. (See id.) Although Strawflower correctly notes that the existence of a partnership is a question of fact, see, e.g., Persson, 125 Cal. App. 4th at 1157, Strawflower fails to allege or argue any facts that would support a finding that RadioShack is a co-owner of Strawflower's RadioShack store.

Accordingly, the Court will GRANT defendants' motion to dismiss Strawflower's claim for breach of fiduciary duty to the extent it is based on fiduciary duties created by a

---

[1] Although the Second Amended Complaint states that the Contract is attached thereto, it is not attached to the copy of the Second Amended Complaint that was filed with the Court. It was, however, attached to the copy of the Second Amended Complaint Strawflower submitted to the Court in connection with its motion for leave to file the Second Amended Complaint. In any event, the Court may consider the Contract in ruling on the instant motion to dismiss, regardless of whether it is attached to the Complaint. See Branch v. Tunnell, 14 F.3d at 454.

partnership.

### 2. Joint Venture

A fiduciary relationship exists among parties to a joint venture. See Oakland Raiders v. National Football League, 131 Cal. App. 4th 621, 632 (2005). "A joint venture, of necessity, 'requires an agreement under which the parties have (1) a joint interest in a common business, (2) an understanding that profits and losses will be shared, and (3) a right to joint control.'" See id. at 637-38 (citing Ramirez v. Long Beach Unified School Dist., 105 Cal. App. 4th 182, 193 (2002)).

Defendants argue that Strawflower's claim for breach of fiduciary duty is subject to dismissal, to the extent it is based on duties created by a joint venture, because there is no allegation that the parties intended to share in the profits and losses incurred in the operation of Strawflower's RadioShack store, and no allegation that the parties intended to share control of the operation of the store. The Court need not reach the issue of control, as the Contract does not provide for the sharing of profits and losses, and Strawflower neither alleges nor argues that the parties otherwise agreed to share profits and losses incurred in the operation of Strawflower's store. Rather, Strawflower argues that an agreement to share profits and losses is not a prerequisite to finding the existence of a joint venture. As noted above, however, the California Court of Appeal has held that "an understanding that profits and losses will be shared" is a requirement of a joint venture. See id.

Accordingly, the Court will GRANT defendants' motion to dismiss Strawflower's claim for breach of fiduciary duty to the extent it is based on fiduciary duties created by a joint venture.[2]

---

[2] Although Strawflower does not allege in its complaint that a fiduciary relationship arose as a result of a franchisor-franchisee relationship between RadioShack and Strawflower, the Court notes that Strawflower does suggest in its opposition that such a duty exists. (See Opp. at 22-23.) The Ninth Circuit repeatedly has held, however, that a fiduciary relationship is not created by a franchisor-franchisee relationship. See, e.g., Boat & Motor Mart v. Sea Ray Boats, Inc., 825 F.2d 1285, 1292 (9th Cir. 1987) (holding "[t]he relation between a franchisor and a franchisee is not that of a fiduciary to a beneficiary" and that "[t]he California Franchise Relations Act has not imposed additional fiduciary duties on

### 3. Confidential Relationship

As noted, Strawflower also alleges that a fiduciary relationship was created between it and RadioShack because "RadioShack insisted, demanded and required that Strawflower provide RadioShack with confidential business information, which RadioShack claimed it would then use for the joint benefit of Strawflower and RadioShack." (See SAC ¶ 31.) Strawflower alleges that said confidential information included "customer information, sales information, and marketing information," which Strawflower states it would not have provided to RadioShack "but for the fiduciary duty that existed." (See id.) Strawflower alleges that RadioShack "used such confidential information for its own benefit and not for the joint benefit of RadioShack and Strawflower." (See id. ¶ 32.) RadioShack argues that Strawflower's breach of fiduciary duty claim is subject to dismissal, to the extent it is based on a confidential relationship between the parties, because Strawflower has not alleged a relationship of the type that gives rise to a fiduciary duty.

"[O]ne standing in a confidential or fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." See Richelle L. v. Roman Catholic Archbishop, 106 Cal. App. 4th 257, 273 (2003) (internal quotation and citation omitted). The term "confidential relationship" refers to "an unequal partnership between parties in which one surrenders to the other some degree of control because of the trust and confidence he reposes in the other." See id. at 272 n.6. "A confidential relationship cannot be imposed on an individual, but must be voluntarily accepted" and "is not created simply by the receipt of confidential information." See id. The "essential elements" of a "confidential relation that gives rise to a fiduciary duty" are: "1) [t]he vulnerability of one party to the other which 2) results in the empowerment of the stronger party by the weaker which 3) empowerment has been solicited or accepted by the stronger party and 4) prevents the weaker party from effectively protecting itself." See id.

---

the franchisor"); Walker v. KFC Corp., 728 F.2d 1215, 1221 n.5 (9th Cir. 1984) (holding California legislature, in enacting Franchise Investment Law, did not intend to impose fiduciary duty on franchisors).

at 272 (internal quotation and citation omitted). "The vulnerability that is the necessary predicate of a confidential relation, and which the law treats as absolutely essential, usually arises from advanced age, youth, lack of education, weakness of mind, grief, sickness or some other incapacity." Id. at 273 (internal quotation and citation omitted).

In Persson v. Smart Inventions, Inc., a case involving negotiations over the buyout of one 50% shareholder in a corporation by the other 50% shareholder, in which the selling party contended key information was withheld by the other party, the California Court of Appeal held that a confidential relationship giving rise to a fiduciary duty was not created "during arms-length business negotiations between the parties," finding the requisite "vulnerability" lacking in such relationship. See Persson, 125 Cal. App. 4th at 1146, 1162. Defendants argue that the instant transaction likewise was an arms-length business transaction in which no "confidential relationship" arose.

Strawflower does not allege any facts in its Second Amended Complaint to suggest that it suffered from the requisite "vulnerability." Moreover, in its opposition, Strawflower does not argue that it could amend the complaint to do so.

Accordingly, the Court will GRANT defendants' motion to dismiss Strawflower's claim for breach of fiduciary duty to the extent it is based on fiduciary duties created by a confidential relationship. As Strawflower has failed to adequately allege any basis for a fiduciary relationship between the parties, Strawflower's claim for breach of fiduciary duty will be dismissed in its entirety.

**B. Antitrust Claims**

RadioShack moves to dismiss Strawflower's claims for unlawful tying, brought under the Clayton Act, Sherman Act, and Cartwright Act (collectively, "antitrust claims"), on two separate grounds. First, RadioShack argues that the Court has already dismissed these claims with prejudice. Second, RadioShack argues that the antitrust claims, on their merits, fail to state a claim.

**1. Prior Dismissal**

In Strawflower's First Amended Complaint, it asserted causes of action under the Clayton Act, Sherman Act, and Cartwright Act, for unlawful tying. Although the claims were not clearly pleaded, Strawflower, in opposition to RadioShack's motion to dismiss the antitrust claims asserted in the First Amended Complaint, clarified that its antitrust claims were based on "an illegal tying arrangement in which RadioShack's sale of RadioShack branded products is tied to Strawflower's continued use of the RadioShack name." (See Order Granting in Part and Denying in Part Motion to Dismiss, filed June 3, 2005, at 5.) The Court granted RadioShack's motion to dismiss the antitrust claims, with prejudice, holding that, under the facts alleged, the RadioShack trademark could not be considered a separate product for purposes of a tying claim. (See id. at 6-7.)

In its Second Amended Complaint, Strawflower asserts a new theory in support of its antitrust claims.[3] Rather than contending that RadioShack violated the antitrust laws by tying the sale of RadioShack-branded products to the use of the RadioShack name, Strawflower now contends that RadioShack violated the antitrust laws by (1) tying Strawflower's purchase of RadioShack-branded products to Strawflower's purchase of non-RadioShack-branded products; and (2) tying Strawflower's use of the RadioShack name to the sale of non-RadioShack-branded products. (See SAC ¶¶ 49-50.)

The Court previously dismissed Strawflower's antitrust claims, with prejudice, based on the theory then asserted. As Strawflower now asserts a new theory in support of its antitrust claims, the Court's prior dismissal does not preclude Strawflower from asserting its antitrust claims, as currently pleaded.

**2. Tying – Legal Standard**

The Supreme Court has held, with respect to the definition of tying, that "the standards used by the [Sherman Act and Clayton Act] are the same." See Jefferson Parish Hospital District No. 2 v. Hyde, 466 U.S. 2, 23 n.39 (1984). Federal decisions interpreting

---

[3] Contrary to RadioShack's argument, the doctrine of res judicata is inapplicable, particularly in light of the Court's order of July 26, 2005, granting Strawflower leave to amend.

1 the Sherman Act and Clayton Act with respect to tying likewise are applicable to tying
2 claims brought under the California Cartwright Act, as the sections of the Cartwright Act
3 addressing tying were modeled after the Sherman and Clayton Acts.  See Hamro v. Shell
4 Oil Co., 674 F.2d 784, 786 (9th Cir. 1982).  Accordingly, and because the parties treat the
5 antitrust claims interchangeably, the Court will analyze together all three antitrust claims
6 asserted by Strawflower.
7       "A tying arrangement is an agreement by a party to sell one product but only on the
8 condition that the buyer also purchases a different (or tied) product, or at least agrees that
9 he will not purchase that product from any other supplier."  Eastman Kodak Co. v. Image
10 Technical Services, Inc., 504 U.S. 451, 461 (1992) (internal quotation and citation omitted).
11 The Supreme Court has held that "[s]uch an arrangement violates § 1 of the Sherman Act if
12 the seller has appreciable economic power in the tying market and if the arrangement
13 affects a substantial volume of commerce in the tied market."  See id.  "The essential
14 characteristic of an invalid tying arrangement lies in the seller's exploitation of its control
15 over the tying product to force the buyer into the purchase of a tied product that the buyer
16 either did not want at all, or might have preferred to purchase elsewhere on different
17 terms."  Id. at 464 n.9 (internal quotation and citation omitted).  "When such 'forcing' is
18 present, competition on the merits in the market for the tied item is restrained and the
19 Sherman Act is violated."  Id.; see also Paladin Associates, Inc. v. Montana Power Co., 328
20 F.3d 1145, 1159 (9th Cir. 2003) (holding elements of tying claim are: "(1) that there exist
21 two distinct products or services in different markets whose sales are tied together; (2) that
22 the seller possesses appreciable economic power in the tying product market sufficient to
23 coerce acceptance of the tied market; and (3) that the tying arrangement affects a not
24 insubstantial volume of commerce in the tied product market") (internal quotation and
25 citation omitted).

### 3. Separate Products

27       As noted, Strawflower alleges that RadioShack engaged in unlawful tying by
28 conditioning Strawflower's ability to purchase RadioShack-branded products and to use the

1 RadioShack trademark (the tying products) on its purchase of non-RadioShack-branded
2 products from RadioShack (the tied products).[4]  (See SAC ¶¶ 49-50.)

3 RadioShack's first argument in support of dismissal is that Strawflower's new
4 allegations, as a legal matter, fare no better than those previously dismissed by the Court.
5 Strawflower previously argued that RadioShack unlawfully tied the use of its trademark to
6 Strawflower's sale of RadioShack-branded products; in other words, that RadioShack
7 permitted Strawflower to use the RadioShack name only if Strawflower sold certain
8 RadioShack products.  The Court dismissed Strawflower's antitrust claims, as based on
9 that theory, because the Ninth Circuit has held that, under such circumstances, a
10 trademark may not be considered a separate product for purposes of a tying claim.

11 As discussed in this Court's previous order of dismissal, the Ninth Circuit, in Krehl v.
12 Baskin-Robbins Ice Cream Co., 664 F.2d 1348 (9th Cir. 1982), rejected the plaintiff's
13 argument therein that Baskin-Robbins' policy of conditioning the grant of a franchise upon
14 the purchase of ice cream exclusively from Baskin-Robbins constituted an unlawful tying of
15 the Baskin-Robbins trademark to the ice cream products the plaintiff was compelled to
16 purchase, in violation of the Sherman Act.  See id. at 1352-54.  The Ninth Circuit held that
17 in "a distribution type" franchise, such as that employed by Baskin-Robbins, "the franchised
18 outlets serve merely as conduits through which the trademarked goods of the franchisor
19 flow to the ultimate consumer" and the trademark in a distribution franchise "serves merely
20 as a representation of the end product marketed by the system."  See id. at 1353-54.  As
21 the Ninth Circuit observed, "[b]ecause the prohibition of tying arrangements is designed to
22 strike solely at the use of a dominant desired product to compel the purchase of a second
23 undesired commodity," there can be no claim for unlawful tying "where the trademark
24 serves only to identify the allegedly tied product."  See id. at 1354; see also Hamro v. Shell

---

26 [4] Strawflower defines the term "RadioShack-branded product" to mean "a product
27 with a label and packaging bearing the name 'RadioShack.'" (See SAC ¶ 37.)  By contrast, a "non-RadioShack-branded product" is "a product not produced by RadioShack and
28 bearing some name other than RadioShack on the label and packaging, for instance, Hewlett-Packard, Lexmark, or Everready." (See id.)

Oil Co., 674 F.2d at 786-87 (rejecting plaintiff's claim that Shell engaged in unlawful tying in violation of Cartwright Act by authorizing plaintiff to use Shell's trademark at his service station only if he purchased Shell gasoline; holding "as a matter of law the Shell trademark and Shell gasoline are not separate and distinct products"). Consequently, this Court found that any requirement that Strawflower purchase RadioShack-branded products in order to use the RadioShack trademark fell squarely within the holdings of Krehl and Hamro and did not state a claim for unlawful tying in violation of the antitrust laws. (See Order Granting in Part and Denying in Part Motion to Dismiss, filed June 3, 2005, at 5-8.)

In the instant complaint, Strawflower alleges that RadioShack is tying Strawflower's ability to sell RadioShack-branded products and its use of the RadioShack trademark to the purchase of non-RadioShack-branded products from RadioShack. (See SAC ¶¶ 49-50.) Contrary to RadioShack's argument, these allegations differ materially from the allegations in the First Amended Complaint. First, Strawflower's current allegation that RadioShack conditioned Strawflower's access to RadioShack-branded products on its purchase of non-RadioShack-branded products raises a classic tying claim. See Eastman Kodak, 504 U.S. at 461 (defining "tying arrangement" as "an agreement by one party to sell one product only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier"). Additionally, as currently pleaded, the RadioShack trademark is not being used to identify the allegedly tied product and, consequently, the trademark may be considered to be a separate product for purposes of a tying claim. See Krehl, 664 F.2d at 1352 (noting that "under certain circumstances, a trademark may be sufficiently unrelated to the alleged tied product to warrant treatment as a separate item"); see also Siegel v. Chicken Delight, Inc., 448 F.2d 43 (9th Cir. 1971) (finding unlawful tying in violation of Sherman Act where chicken franchise conditioned use of trademark on purchase of cooking equipment, packaging

1  supplies, and mixes that were not manufactured by franchisor).[5]

2  Accordingly, the Court rejects RadioShack's argument that the legal issues
3  presented by Strawflower's current allegations are indistinguishable as a legal matter from
4  those presented by the allegations in its prior complaint.

### 4. Purchase of Allegedly Tied Products

6  RadioShack further argues that the antitrust claims are subject to dismissal because
7  Strawflower fails to allege that it purchased any of the allegedly tied products.  Strawflower
8  alleges that during the first twenty years after the Contract was executed, it purchased non-
9  RadioShack-branded products only from independent distributors.  (See SAC ¶ 39.)
10 Thereafter, Strawflower alleges, RadioShack implemented a policy requiring Strawflower to
11 buy non-RadioShack-branded products only from RadioShack.  (See id. ¶ 40.)  Strawflower
12 alleges that RadioShack terminated the Contract "based upon RadioShack's claim that
13 Strawflower has not complied with the policy."  (See id. ¶ 47.)  As RadioShack points out,
14 Strawflower does not allege that it, in fact, purchased any non-RadioShack-branded
15 products from RadioShack.

16 The Ninth Circuit has stated that an "essential" element of a tying claim is "proof that
17 the seller coerced a buyer to purchase the tied product."  See Paladin Associates v.
18 Montana Power Co., 328 F.3d at 1159 (emphasis in original).  In Paladin, the Ninth Circuit
19 further noted that "mere sales pressure" does not constitute evidence of the requisite
20 coercion.  See id. at 1160.  Because Paladin did not involve a plaintiff who refused to
21 purchase the tied product, the Ninth Circuit did not address whether evidence of acts that

---

[5] Because the RadioShack trademark cannot be said to identify products sold in RadioShack stores "bearing some name other than RadioShack on the label and packaging, for instance, Hewlett-Packard, Lexmark, or Everready," (see id.), the instant case is distinguishable from cases cited by RadioShack in which the product at issue was manufactured by a third party, but sold under the defendant's trademark, not under the trademark of the manufacturer.  See, e.g., Krehl, 664 F.2d at 1354 n.14 (ice cream sold under Baskin-Robbins trademark but not manufactured by Baskin-Robbins); Power Test Petroleum Distributors, Inc. v. Calcu Gas, 754 F.2d 91, 98 (2nd Cir. 1985) (gasoline sold under PowerTest trademark but not manufactured by PowerTest); Jack Walters & Sons Corp. v. Morton Building, Inc., 737 F.2d 698, 704 (7th Cir. 1984) (prefabricated building sold under Morton trademark although all components not manufactured by Morton).

could be described as attempted coercion were sufficient to state a tying claim. Other circuits, however, have held that no tying claim can be stated where the plaintiff refused to purchase the tied product. See, e.g., Famous Brands, Inc. v. David Sherman Corp., 814 F.2d 517, 523 (8th Cir. 1987) (citing Unijax, Inc. v. Champion Int'l, Inc., 683 F.2d 678, 685 (2nd Cir. 1982) ("Actual coercion by the seller that in fact forces the buyer to purchase the tied product is an indispensible element of a tying violation.")). Additionally, a leading antitrust treatise concurs that "an express tying contract that is proposed to buyers but rejected by them does not constitute a tie" and that "the mere termination or rejection of a dealer or customer who refuses to comply with a tie" is not unlawful tying. See Areeda, Elhauge, and Hovenkamp, Antitrust Law, §§ 1753a, 1753f (2d ed. 2004).

In its opposition, Strawflower states that it did purchase non-RadioShack-brand products from RadioShack, although it did not purchase enough of the products to satisfy RadioShack. (See Opp. at 11; see also Fillerup Decl. Ex. A (Mackintosh Decl. ¶ 11.) In reply, RadioShack argues that Strawflower's purchase of some non-RadioShack products from RadioShack is not sufficient to support an antitrust claim if Strawflower did not purchase the percentage of such products required by RadioShack. This argument was not addressed in RadioShack's opening brief, however, and Strawflower has not had an opportunity to respond to it.

Accordingly, the Court will GRANT RadioShack's motion to dismiss Strawflower's antitrust claims, for failure to allege actual purchase, but will afford Strawflower leave to amend its antitrust claims to allege that it purchased non-RadioShack-branded products from RadioShack. Thereafter, if RadioShack still wishes to move to dismiss based on the argument raised in its reply, it may do so.

**5. Market Power**

As an additional ground for dismissal of the antitrust claims, RadioShack argues that Strawflower has failed to adequately allege that RadioShack possesses the requisite market power with respect to any of the alleged tying products. As noted, Strawflower alleges the tying products are RadioShack-branded products and the RadioShack

trademark.  (See SAC ¶¶ 49-50.)

The Ninth Circuit has held that an essential element of a tying claim is "that the seller possesses appreciable economic power in the tying product market sufficient to coerce acceptance of the tied market."  See Paladin Associates, Inc. v. Montana Power Co., 328 F.3d at 1159.  "Market power is the power to force a purchaser to do something that he would not do in a competitive market."  See Eastman Kodak, 504 U.S. at 464 (internal quotation and citation omitted).  "The existence of such power ordinarily is inferred from the seller's possession of a predominant share of the market."  See id.

Strawflower does not allege that RadioShack has a predominant share of the market for any of the products alleged to be RadioShack-branded products, including "batteries, ionizers, power supplies, toys, and massagers." (See SAC ¶ 49.)  Rather, Strawflower alleges it "spent the past 25 years and substantial time and money in developing the RadioShack name and the market for RadioShack products," that this investment "locked Strawflower into a relationship with RadioShack," and that "RadioShack took advantage of Strawflower's locked-in position" by initiating a new policy requiring Strawflower to purchase non-RadioShack-branded products only from RadioShack.  (See SAC ¶ 51.)

Plaintiffs rely on Eastman Kodak, in which the Supreme Court addressed this "lock-in" theory of market power.  In Eastman Kodak, the issue was whether Eastman Kodak had unlawfully tied the sale of service for Kodak copying machines to the sale of parts for such machines.  See id. at 459.  Eastman Kodak argued that because it lacked market power in the market for the machines themselves, it could not be found to have market power in the "aftermarket" for service and parts for the machines, as a matter of law.  See id. at 456.  The Supreme Court rejected the argument.  The Supreme Court first noted that plaintiffs had submitted evidence that Kodak did in fact have market power in the parts market.  See id. at 464-65.  Consequently, the Supreme Court held, Kodak could not demonstrate it was entitled to summary judgment unless it showed that despite such evidence, "an inference of market power [was] unreasonable."  See id. at 469.  The Supreme Court observed that Kodak's theory, "that lack of power in the equipment market

necessarily precludes power in the aftermarkets," rested on the assumption that if Kodak raised its prices for parts and service above competitive levels, customers would stop buying Kodak equipment. See id. at 469-70. The Supreme Court found, however, that "[i]f the cost of switching is high, consumers who already have purchased the equipment, and thus are 'locked in,' will tolerate some level of service-price increases before changing equipment brands" and, consequently, "a seller profitably could maintain supracompetitive prices in the aftermarket if the switching costs were high relative to the increase in service prices, and the number of locked-in customers were high relative to the number of new purchasers." See id. at 475. Because the plaintiffs presented evidence that switching costs for Kodak equipment owners were very high, the Supreme Court concluded "a question of fact" existed as to "whether information costs and switching costs foil the simple assumption that the equipment and service markets act as pure complements to each other." See id. at 477. Eastman Kodak thus suggests that a plaintiff may prove market power by showing such plaintiff was economically "locked in" to a business relationship with the defendant. See also Subsolutions, Inc. v. Doctor's Associates, Inc., 62 F. Supp. 2d 616, 625-26 (D. Conn. 1999) (holding plaintiff adequately alleged market power by reference to Eastman Kodak lock-in theory).

In relying on the Eastman Kodak "lock-in" theory to prove the defendant has the requisite market power, a plaintiff still must allege, however, that the challenged activity affected a substantial portion of the relevant market. See Universal Avionics Systems Corp. v. Rockwell Int'l Corp., 184 F. Supp. 2d 947, 955 (D. Ariz. 2001) (holding challenged conduct must affect "substantial number of customers"); see also Areeda, Elhauge and Hovenkamp, Antitrust Law, § 1740a (2d ed. 2004) (same). In Eastman Kodak, the challenged conduct affected all customers who owned Kodak photocopiers and all independent servicing organizations who serviced Kodak photocopiers; in Subsolutions, the challenged conduct affected all Subway franchisees. See Eastman Kodak, 504 U.S. at 458, 477; see Subsolutions, 62 F. Supp. 2d at 620. Here, by contrast, Strawflower does not allege that the challenged RadioShack policy applied to all RadioShack stores, but,

rather, alleges that "RadioShack implemented a policy that required Strawflower to buy non-RadioShack-branded products directly from RadioShack." (See SAC ¶ 40 (emphasis added).)

Accordingly, the Court will GRANT RadioShack's motion to dismiss Strawflower's antitrust claims, for failure to adequately allege market power. The Court will, however, afford Strawflower leave to amend.

### 6. Antitrust Injury

RadioShack's final argument in support of dismissal of the antitrust claims is that Strawflower lacks standing to assert such claims because it has failed to allege that it suffered antitrust injury.

A suit for violation of the Clayton Act or the Sherman Act may be brought by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws[.]" See 15 U.S.C. § 15.[6] A plaintiff, however, "must prove the existence of antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." See Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328, 334 (1990) (internal quotation and citation omitted; emphasis in original). "[I]njury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anti-competitive aspect of the practice under scrutiny, since it is inimical to the antitrust laws to award damages for losses stemming from continued competition." Id. (internal quotations and citations omitted). "Where the defendant's conduct harms the plaintiff without adversely affecting competition generally, there is no antitrust injury." See Paladin, 328

---

[6] The Cartwright Act similarly confers standing on "any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by [the Cartwright Act], regardless whether such injured person deals directly or indirectly with the defendant." See In re Napster, Inc. Copyright Litigation, 354 F. Supp. 2d 1113, 1125 (N.D. Cal. 2005) (citing Cal. Bus. & Prof. Code § 16750(a).) As Strawflower correctly notes, the definition of "antitrust injury" under California law is less restrictive than the federal standard, in that California law expressly confers antitrust standing on persons who are injured indirectly by the defendant's anticompetitive conduct. See id. As Strawflower alleges that it was injured directly by RadioShack, however, the difference appears immaterial for purposes of the instant motion, and no party argues to the contrary.

1  F.3d at 1158.

2      Here, Strawflower expressly alleges that RadioShack's requirement that Strawflower
3  purchase non-RadioShack-branded products only from RadioShack harmed competition
4  because, according to Strawflower, "it precluded Strawflower from buying non-RadioShack-
5  branded products at lower prices and on better terms from sellers other than RadioShack,
6  and it forced Strawflower to sell at higher prices to consumers."  (See SAC ¶ 48.)
7  RadioShack argues that Strawflower nonetheless cannot show it suffered antitrust injury
8  because it has not alleged that it was coerced into buying undesired products from
9  RadioShack.  As noted above, Strawflower states in its opposition that it did purchase such
10 products from RadioShack, and the Court will afford Strawflower leave to amend the
11 complaint to so allege.

12     Accordingly, the Court will GRANT RadioShack's motion to dismiss Strawflower's
13 antitrust claims, for failure to allege antitrust injury, with leave to amend.

14     **C.  Declaratory Relief Claims**

15     RadioShack moves to dismiss or strike both of Strawflower's claims for declaratory
16 relief on the ground that such claims are duplicative of Strawflower's other claims.

17     By statute, the Court "may," but is not required to, "declare the rights and other legal
18 relations of any interested party seeking such declaration, whether or not further relief is or
19 could be sought."  See 28 U.S.C. § 2201(a); see also Wilton v. Seven Falls Co., 515 U.S.
20 277, 282 (1995) (noting courts' discretion to entertain claim for declaratory judgment).  Rule
21 57 of the Federal Rules of Civil Procedure provides that "[t]he existence of another
22 adequate remedy does not preclude a judgment for declaratory relief in cases where it is
23 appropriate."  See Fed. R. Civ. Proc. 57.  The Supreme Court has held, however, that a
24 court has the discretion to dismiss a claim for declaratory relief if "a declaratory judgment
25 would serve no useful purpose."  See Wilton, 515 U.S. at 288.

26     **1.  Second Claim For Relief**

27     Strawflower seeks, in its second claim for relief, a judgment declaring that
28 RadioShack breached the Contract, declaring that Strawflower did not breach the Contract,

and declaring any further relief arising out of the Contract that is "necessary, just and/or proper." (See SAC ¶ 18.) This claim, as defendants correctly note, is entirely duplicative of Strawflower's cause of action for breach of contract. As a separate claim for a declaratory judgment on the issue serves "no useful purpose" in the instant litigation, the Court will GRANT defendants' motion to dismiss the second claim for relief.

### 2. Third Claim For Relief

Strawflower seeks, in its third claim for relief, a declaratory judgment that the parties had a franchisor-franchisee relationship within the meaning of the CFIL and CFRA and that, consequently, RadioShack was subject to all the duties and obligations of a franchisor under those statutes. (See SAC ¶ 27.) Strawflower further alleges that RadioShack "failed to comply with a franchisor's obligations in connection with termination of a franchise." (See id. ¶ 25.)

RadioShack argues that the third claim for relief should be dismissed as duplicative of Strawflower's claim for unfair competition in violation of § 17200. Strawflower alleges that RadioShack engaged in unfair competition in violation of § 17200 by violating the CFIL and CFRA, as well as by violating the Clayton Act, Sherman Act, and the Cartwright Act. (See id. ¶¶ 58-59.) Because Strawflower has alleged multiple bases for liability under § 17200, it is conceivable the Court could find that RadioShack engaged in unfair competition without reaching the merits of Strawflower's claim under the CFIL and CFRA. Consequently, Strawflower's claim for a declaratory judgment that the parties had a franchisor-franchisee relationship within the meaning of the CFIL and CFRA and that, consequently, RadioShack was subject to all the duties and obligations of a franchisor under those statutes, (see SAC ¶ 27), is not necessarily duplicative of Strawflower's § 17200 claim.

Accordingly, the Court will DENY RadioShack's motion to dismiss the third claim for relief.

/ /

**CONCLUSION**

1    For the reasons set forth above, RadioShack's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. The motion to dismiss Strawflower's claim for breach of fiduciary duty is GRANTED, and said claim is DISMISSED with prejudice.

2. The motion to dismiss Strawflower's antitrust claims is GRANTED, with leave to amend.

3. The motion to dismiss Strawflower's second claim for relief, for a declaratory judgment, is GRANTED.

4. The motion to dismiss Strawflower's third claim for relief, for a declaratory judgment, is DENIED.

5. Strawflower may file a Third Amended Complaint within 21 days of the date of this order. If Strawflower fails to timely file a Third Amended Complaint, all claims that have been dismissed with leave to amend will be dismissed with prejudice.

This order terminates Docket No. 40.

**IT IS SO ORDERED.**

Dated: September 20, 2005

MAXINE M. CHESNEY
United States District Judge